IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| 168th and DODGE, L.P., a Nebraska, Limited Partnership f/k/a BROWN INVESTMENT PARTNERSHIP, LTD., and RED DEVELOPMENT OF WEST DODGE, LLC, a Missouri Limited Liability Company, <br><br> Plaintiffs, <br><br> vs. <br><br> RAVE REVIEWS CINEMAS, LLC, a Texas Limited Liability Corporation, <br><br> Defendant. | MEMORANDUM AND POINTS OF LAW IN SUPPORT OF MOTION TO COMPEL |

### INTRODUCTION

The Plaintiffs 168th and Dodge, L.P, and RED Development of West Dodge, LLC (collectively "Village Pointe") have filed this lawsuit against Defendant Rave Reviews Cinemas, LLC ("Rave"), in the United States District Court for the District of Nebraska (Case No. 8:03cv171). Plaintiffs seek to recover damages from Rave caused by Rave's failure to abide by its promise to build and operate a movie theater at Village Pointe's shopping center development in Omaha, Nebraska.

Boston Ventures Management, Inc. ("Boston Ventures"), is a venture capitalist firm and equity partner of Rave. Boston Ventures has invested over sixty million dollars in Rave and exercises significant control over Rave's operations. Rave has at least five members on its Board of Managers. Three of those managers work for Boston Ventures. Boston Ventures owns a majority of the stock in Rave.

Village Pointe subpoenaed documents from Boston Ventures relating to Boston Ventures' knowledge of the reasons why Rave pulled out of the project and seeking

1

information relating to Boston Venture's relationship with Rave. Despite Boston Ventures' apparent controlling interest in Rave, Boston Ventures has produced only <u>two pages</u> of documents that it claims are responsive to Plaintiffs' subpoena. Although it acknowledges that it has additional documents, Boston Ventures maintains that all documents regarding Boston Ventures' financing of Rave are irrelevant to Village Pointe's lawsuit and it has refused to produce them. Because these document requests were reasonably calculated to lead to the discovery of admissible evidence, Boston Venture's objections are without merit. Accordingly, Boston Ventures should be ordered to produce all documents responsive to the subpoena. Plaintiffs should also be awarded their expenses and fees associated with this motion.

## FACTUAL BACKGROUND

On July 12, 2004, Plaintiffs served a Rule 45 subpoena on Boston Ventures requesting that they produce specified documents by August 4, 2004. (Ex. 2, Subpoena). On July 28, 2004, Boston Ventures, through its legal counsel, sent a letter to Plaintiffs' counsel stating six objections to Plaintiffs' subpoena. (Ex. 3, July 28, 2004 Letter). Boston Ventures objected claiming that the subpoena: (1) assumes that the documents exist, (2) seeks information protected by the attorney-client privilege and work-product doctrine, (3) is overly broad, unduly burdensome, vague and indefinite, (4) seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence, (5) is not narrowly tailored and imposes an undue burden, and (6) fails to provide Boston Ventures with reasonable time to respond. (Ex. 3, July 28, 2004 Letter). Subject to its objections, Boston Ventures agreed to provide all documents responsive to Subpoena Rider 1, 2, 3,

and 5, but refused to produce any documents in response to Subpoena Rider 4[1]. (Ex. 3, July 28, 2004 Letter).

On August 3, 2004, Boston Ventures produced only two pages of documents. (Ex. 4, August 3, 2004 Letter). These documents show that Rave was planning on opening a theater on Dodge Road in Omaha, Nebraska in the Spring of 2004 with construction to begin in the Third Quarter of 2003 and that this plan was discussed at a September 11, 2002 Board of Managers meeting. (Ex. 4, August 3, 2004 Letter). Boston Ventures continued to assert the attorney-client privilege and work product doctrine, but failed to produce a privilege log supporting this objection. (Ex. 4, August 3, 2004 Letter).

On August 11, 2004, Village Pointe's counsel wrote a letter to Boston Ventures' counsel requesting that it clarify its objections to determine whether Boston Ventures had additional documents that it was withholding from production pursuant to its objections and whether they were claiming privilege over those documents. (Ex. 5, August 11, 2004 Letter). In its letter, Village Pointe offered to enter into an appropriate protective order to protect any confidential and proprietary documents. Village Pointe also offered Boston Ventures additional time in which to respond to the subpoena. (Ex. 5, August 11, 2004 Letter).

On August 18, 2004, Boston Ventures clarified its production by stating that it was not in possession of any additional documents responsive to Subpoena Rider 1, 2, 3, or 5 but stated that "Boston Ventures continues to withhold documents responsive to request number four." (Ex. 6, August 18, 2004 Letter). Boston Ventures asserted that "Documents

---

[1] Subpoena Rider 4 requests the same documents as subpoena Rider 5 in the Subpoena Duces Tecum issued on June 3, 2005.

3

concerning these topics are not germane to the issues in dispute--the alleged opening and construction of a theatre (as described in your letter) - - and constitute confidential and proprietary business information and/or trade secrets." (Ex. 6, August 18, 2004 Letter). Boston Ventures declined the Plaintiffs' offer that production of any confidential and proprietary documents be produced pursuant to a protective order. (Ex. 6, August 18, 2004 Letter).

On June 3, 2005, after coordinating with counsel for all the parties, Village Pointe issued a subpoena duces tecum and noticed the deposition of Boston Ventures pursuant to Fed. R. Civ. P. 30(b)(6) to take place on June 30, 2005 in Boston. (Ex. 7, May 31, 2005 Subpoena). On June 10, 2005, Boston Ventures objected to portions of the subpoena but advised Village Pointe that it would search for additional documents responsive to all topics identified in the subpoena except for topic five. (Ex. 8, June 10, 2005 Letter). In addition, Boston Ventures agreed that they would designate a witness to testify regarding all topics except for topic five on the subpoena rider. Id. Boston Ventures stated that it would produce any additional documents by June 27, 2005. Id. On June 10, 2005, Village Pointe informed Boston Ventures that they stand by their subpoena, in its totality, and again offered to enter into an appropriate protective order to safeguard the confidential and proprietary nature of the information that Plaintiffs seek. (Ex. 8, June 10, 2005 Letter).

On June 27, 2005, Boston Ventures failed to produce any additional documents and did not produce any additional documents prior to the deposition. (Ex. 1, Thalken Affidavit). On June 28, 2005, Plaintiffs' counsel, via telephone conference, again requested that Boston Ventures produce documents regarding Boston Ventures' financing of Rave. (Ex. 1, Thalken Affidavit). On June 29, 2005, Plaintiffs again requested that

4

Boston Ventures produce all responsive documents on the morning of the deposition of Boston Venture's corporate representative, Elizabeth Granville-Smith. (Ex. 9, June 29, 2005 Letter). Specifically, Plaintiffs requested documents regarding the specific protocols or procedures that must be followed by Rave and/or Boston Ventures in approving new theater projects. Id. In addition, noting that Boston Ventures had previously produced an agenda showing that the Omaha theater was being discussed at a Board of Manager's meeting, Plaintiffs requested that Boston Ventures produce copies of all meeting minutes or notes from the participants in that September 11, 2002 Board of Managers meeting. (Ex. 9, June 29, 2005 letter). Boston Ventures failed to produce any additional documents at the deposition.

During her deposition, Ms. Granville-Smith testified on behalf of Boston Ventures. She testified that Boston Ventures holds three seats on Rave's Board of Managers. (Ex. 10, Granville-Smith Depo. 89:5-10). Ms. Granville-Smith is a member of Rave's Board of Managers. (Ex. 10, Granville-Smith Depo. 136:24-137:3). Boston Ventures is a majority-shareholder of Rave. (Ex. 10, Granville-Smith Depo. 57:23-58:3). Boston Ventures has invested $60 million dollars in Rave. (Ex. 10, Granville-Smith Depo. 49:6-11; 131:2:-4).

During her deposition, Ms. Granville-Smith was asked regarding Boston Ventures' ability to elect the members of Rave's Board of Managers. Ms. Granville-Smith admitted that Boston Ventures has an LLC Agreement that governs its relationship with Rave.

> Q.   Okay. And as far as the ability to elect the Board of Managers of Rave Reviews Cinemas, Boston Ventures still has that power?
> 
> Ms. Shields: Objection, calls for a legal conclusion.
> 
> The Witness: I would have to review our current LLC agreement to give you

a very specific and certain answer to that.

(Ex. 10, Granville-Smith Depo. 153:10-18).

> Q. There are written documents, are there not, that set forth the relationship between these two companies [Boston Ventures and Rave]?
>
> A. I'd appreciate it if you didn't put – change my terminology that I'm using. I'm being very specific in my terms. I think that's important.
>
> The way I've responded to you is that there are written documents that govern our investment in the company [Rave].
>
> Q. Okay. And detail aspects of your relationship.
>
> Ms. Shields: Same objection.
>
> The Witness: I don't fully understand what you mean by the term relationship. We have the same kinds of documents that any company would have.
>
> BY MR. COYLE:
>
> Q. Okay. But none of those have been produced today.
>
> A. No, they have not.

(Ex. 10, Granville-Smith Depo. 187:9-188:7).

During his deposition, Scott Rehorn, one of the Plaintiffs' principals, testified that Rave informed him that Boston Ventures would not allow Rave to build a theatre at Village Pointe.

> Q. Okay. What's your recollection of that conversation?
>
> A. My recollection of the conversation was Bob and Tom [Rave's officers] called and said that we have bad news, that our deal was

> turned down by Boston Ventures and by Elizabeth whatever her name is, Smith, and Tom was apologetic and said that – I said this was supposed to be a formality, and he said it was supposed to be a formality.

(Ex. 11, Rehorn Deposition 289:19-290:1).

## ARGUMENT

**THIS COURT SHOULD ORDER BOSTON VENTURES TO PRODUCE ALL DOCUMENTS IN ITS POSSESSION THAT ARE RESPONSIVE TO SUBPOENA RIDER NO. 5.**

Subpoena Rider 5 requests that Boston Ventures "Produce all documents relating to Boston Ventures Management, Inc.'s financing of or investment in, Rave Reviews Cinemas, L.L.C." (Ex. 7, Subpoena). Boston Ventures admits that it has documents that are responsive to this request, but refuses to provide them claiming that they are not "germane" to the issue in dispute and they are confidential and proprietary.

Boston Ventures' claim that the documents are confidential and proprietary is easily dealt with. Plaintiffs and Rave have already entered into a protective order in this matter and Plaintiffs are more than willing to enter into a protective order with Boston Ventures. Indeed, Plaintiffs offered to enter into a protective order whereby the information would be used only for purposes of this litigation and thereby the confidential nature of the information would be protected. (Ex. 5, August 11, 2004 Letter). Boston Ventures declined this offer. Plaintiffs remain willing to enter into an appropriate protective order regarding the documents Boston Ventures is withholding.

With respect to its objection that the documents Plaintiffs seek are not "germane" to the issues in the lawsuit, that is not a decision that Boston Ventures can unilaterally make. Boston Ventures is not a party to this lawsuit and does not have information to make a determination as to the relevancy of a particular document. Moreover, Fed. R. Civ. P. 45 (c)(3)(A) lists the reasons that a subpoena may be quashed or modified. Relevance is not one of those reasons. Therefore, Boston Ventures does not have standing to assert a relevance objection to the subpoena. Plaintiffs are entitled to all information that is *reasonably calculated* to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Subpoena Rider 5 meets that test.

Boston Ventures was financing Rave's operations and, based on Ms. Granville-Smith's testimony, exercised some control over the decisions made by Rave, given that Boston Ventures may have had majority control over Rave's Board of Managers and owned a majority of the stock. Ms. Granville-Smith's testimony regarding Boston Ventures' control over Rave was less than clear in that she stated that she believed that there were five members of the Board of Managers, three of whom worked for Boston Ventures, but that there could be additional members of the Board of Managers. (Ex. 10, Granville-Smith Depo. 137:4-15). Ms. Granville-Smith testified that she could not be sure of the degree of control Boston Ventures had over Rave unless she checked the "LLC Agreement." (Ex. 10, Granville-Smith Depo. 153:10-18). Boston Ventures failed to produce a copy of this LLC Agreement. In addition, Ms. Granville-Smith admitted that she has documents that govern Boston Ventures' investment in Rave, but that she did not produce them. (Ex. 10, Granville-Smith Depo. 187:9-188:7).

Plaintiffs requested these documents which are reasonably calculated to lead to the

discovery of admissible evidence. In their lawsuit, Plaintiffs allege, in part, that, at the last minute, Rave pulled out of the Village Pointe project after Plaintiffs incurred significant costs in reliance on Rave's promise to build an operate a theater on site. Rave claims that it never agreed to build a theater at Village Pointe.

It now appears that, in general, Boston Ventures exercised some level of control over which theaters Rave built. Plaintiffs are trying to learn the nature and extent of that control, including any procedures or protocols that Rave had to follow, in order to get approval for the Village Pointe project. For example, Ms. Granville-Smith testified that Rave cannot enter into a lease unless Boston Ventures has reviewed it and the Board of Managers has approved it. (Ex. 10, Granville-Smith Depo. 125:18-21). Mr. Rehorn testified in his deposition that Rave informed him that Boston Ventures killed the deal. (Ex. 11, Rehorn Deposition 289:19-290:1). Plaintiffs would like to know what requirements Rave had to meet before the Omaha site was approved to determine what steps Rave actually took to open the theater they had promised Plaintiffs. For example, if the LLC Agreement between Boston Ventures and Rave, which Ms. Granville-Smith referred to in her deposition but which Boston Ventures has not produced, required that Rave receive board approval before beginning lease negotiations that process appears to have not been followed by Rave in this case.

Moreover, the financial records of Boston Ventures may have documents showing that a particular amount of money was allocated for the Omaha project which would be further evidence that Rave promised to build a theater in Omaha. The financial documents could also provide a reason why Rave chose not build a theater in Omaha. Plaintiffs cannot make this determination until they see the documents which Boston Ventures has

withheld. Moreover, Plaintiffs should be given the opportunity to further question Boston Ventures' corporate representative regarding these documents since Boston Ventures refused to produce a witness at the 30(b)(6) deposition who could speak to topic 5 of the subpoena.

Boston Ventures has produced documents showing that the Omaha theater was an agenda item at a Board of Managers meeting on September 11, 2002. Thus, Boston Ventures clearly had some interest in the Omaha theater project. In addition, the nature and extent of control that Boston Ventures exercised over Rave is important information to the Plaintiffs's claims. Plaintiffs are entitled to learn what protocols and procedures Rave had to follow in order to receive financing from its majority shareholder, Boston Ventures. If Rave did not follow those procedures, it would be further evidence of Rave's bad faith in dealing with Plaintiffs by pulling out of the project after Plaintiffs had detrimentally relied on the Plaintiffs' promise to build and operate a theater.

## CONCLUSION

Boston Ventures is not a typical third-party witness who has only tangential information relating to this transaction. Ms. Granville-Smith's testimony establishes that Boston Ventures, which has invested $60 million in Rave, owns a majority of Rave's stock, may control a majority of the seats on Rave's Board of Managers, and exercised significant control over Rave's decisions as to which theaters Rave would build. Indeed, Plaintiffs were told by Rave's officers that Boston Ventures refused to allow Rave to build in Omaha. Boston Ventures acknowledges that it has documents requested by Plaintiffs but refuses to produce them. Subpoena Rider 5 is reasonably calculated to lead to the discovery of admissible evidence. Accordingly, Plaintiffs request that this Court order Boston Ventures

to produce the documents it has wrongfully withheld and allow Plaintiffs to depose Boston Ventures' corporate representative regarding topic 5. With the discovery deadline in this case approaching in mid September, time is of the essence.

BY:

168th and DODGE, L.P., a Nebraska Limited Partnership f/k/a BROWN INVESTMENT PARTNERSHIP, LTD, and RED DEVELOPMENT OF WEST DODGE, LLC, a Missouri Limited Liability Company, Plaintiffs

*/s/ Michael Coyle*

Michael F. Coyle, #18299
FRASER, STRYKER, MEUSEY, OLSON, BOYER & BLOCH, P.C.
500 Energy Plaza
409 South 17th Street
Omaha, Nebraska 68102
(402) 341-6000
ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2005, I served the foregoing on the following individuals via regular United States Mail:

Edward G. Warin
McGrath, North, Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, NE 68102

Lynn S. McCreary
Jennifer A. Donnelli
Bryan Cave, LLP
1200 Main Street, Suite 3500
Kansas City, MO 64105-2100

Kathleen Burdette Shields
Choate, Hall & Stewart
Exchange Place
53 State Street
Boston, MA 02109-2804
Attorneys for Boston Ventures Management, Inc.

/s/ Wiley Coyle

388584.02