UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| 168th and DODGE, L.P. (f/k/a BROWN INVESTMENT PARTNERSHIP, LTD.) and RED DEVELOPMENT OF WEST DODGE, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> RAVE REVIEWS CINEMAS, LLC, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 05-MC-10293-RGS |

**THIRD PARTY BOSTON VENTURES MANAGEMENT INC.'S
OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

Third party Boston Ventures Management Inc. ("Boston Ventures") hereby submits its opposition to the Motion to Compel filed by Plaintiffs 168th and Dodge, L.P. and Red Development of West Dodge, LLC (collectively "Red"). Despite Boston Ventures' diligent search for documents responsive to two subpoenas, its production of responsive documents, and its production of a corporate designee for deposition, Red has moved to compel the production of an overbroad category of irrelevant documents. The additional discovery sought by Red is highly confidential, is only marginally, if at all, relevant to the subject matter of the underlying dispute, is unnecessary given the explicit testimony of Boston Ventures' corporate designee, and should have been pursued first from the defendant in the underlying dispute. Responding to Red's sweeping discovery demands would thus impose a significant and undue burden on Boston Ventures. Red's motion should be denied.

1

## FACTUAL BACKGROUND

The dispute to which this motion relates arises from negotiations between Red and Rave Reviews Cinemas, LLC ("Rave") concerning a potential movie theater to be built in a shopping center in Omaha, Nebraska. Red is the developer of that shopping center, known as the Village Pointe project. Boston Ventures is an investor in Rave. Employees of Boston Ventures sit on Rave's Board of Managers. Like typical corporate directors, Boston Ventures employees are not involved in the day-to-day operations of Rave. *See* Affidavit of Kathleen Burdette Shields ("Shields Aff."), Ex. A, at 22 (testimony of Boston Ventures' corporate designee that Boston Ventures personnel do not work with Rave's management on a daily basis). Instead, as members of the Board, Boston Ventures personnel are consulted about the major strategic and financial decisions of the company, significant expenditures of capital, and long-range planning. Rave has its own officers and management team that are responsible for the company's daily operations.

### A.   The Dispute Between Red and Rave

During 2002, Red and Rave negotiated about the possibility of Rave building a theater in the Village Pointe shopping center, that Red was then developing. Red and Rave signed a letter of intent relating to the proposed theater project, but were not able to finalize their negotiations relating to a lease in the shopping center. Another theater company (unrelated to the parties here) proceeded with plans to build a theater at Village Pointe, and that theater opened as part of the shopping center's grand opening in 2004.

Red sued Rave for breach of an express contract (the letter of intent), breach of an implied contract, and promissory estoppel. Red's breach of express contract claim was dismissed by the Court. On the basis of its remaining claims, Red claims damages for expenses

it allegedly incurred in reliance on Rave's purported promise to build a theater at Village Pointe. Rave disputes Red's claims.

B.   **Boston Ventures' Responses and Objections to Red's Two Subpoenas**

Boston Ventures' first involvement in the dispute between Red and Rave was its receipt of a subpoena *duces tecum* from Red dated July 12, 2004. *See* Red's Index of Evidence ("Index"), Ex. 2. That subpoena requested four categories of documents relating to the dispute between Red and Rave, including correspondence relating to the Village Pointe project, documents relating to building or operating a theater in the Village Pointe project, documents that related generally to building or operating theaters in the Omaha area, and documents relating to the lawsuit filed by Red. *Id.* (topics 1-3, 5) With respect to each of these four categories of documents, Boston Ventures undertook a diligent and careful search for documents. Boston Ventures' corporate designee, Elizabeth Granville-Smith, testified at length about the thorough process that she followed to search for and collect documents potentially responsive to Red's subpoena. She searched her own personal paper and electronic files, and all of Boston Ventures' central files. *See* Shields Aff., Ex. A at 15-21. She also sent the subpoena to the members of the team that works with Rave and asked them to search their own paper and electronic files and to report to her the results of their searches. *See id.* Boston Ventures then produced the two pages of documents it located as a result of that search. *See* Index, Ex. 4. Boston Ventures has not withheld a single document responsive to these four categories of documents.

Boston Ventures objected to the fifth category of documents requested in Red's subpoena:

> Produce all documents relating to Boston Ventures Management, Inc.'s financing of, or investment in, Rave Reviews Cinemas, L.L.C.

3

Index, Ex. 2 (topic 4). Boston Ventures objected to this request under Fed. R. Civ. P. 45(c)(2)(B) because the request was significantly overbroad and would thus impose an undue burden on Boston Ventures to search for such documents, particularly because the requested documents were entirely unrelated to building or operating a theater in Omaha, and were highly confidential. *See* Index, Ex. 3, 6. As framed, the request seeks every document that Boston Ventures has that relates to Rave because all such documents "relat[e] to Boston Ventures' . . . investment in Rave."

Nearly ten months later, on May 31, 2005, Red served a second, even broader, subpoena on Boston Ventures. *See* Index, Ex. 7. The new subpoena contained the same objectionable request ("Topic 5"). *Id.* (topic 5). Pursuant to Fed. R. Civ. P. 45(c)(2)(B), Boston Ventures again objected to Topic 5, and informed Red that it would not search for documents responsive to that request and would not produce a corporate representative to testify concerning that particular request. *See* Index, Ex. 8. With respect to the non-objectionable categories of documents requested in the subpoena, Boston Ventures again undertook a thorough search for documents and followed the same procedures as its first search, despite its stated objection that the second subpoena imposed an unwarranted burden on a third party who had already once responded to a largely duplicative subpoena. Boston Ventures did not locate any additional responsive documents.

### C.     Red's Eleventh-Hour Posturing

After Boston Ventures' June 10 objection to the second subpoena, counsel for Boston Ventures heard nothing from Red's counsel until the evening of June 28, two days before the scheduled deposition of Boston Ventures' corporate representative. *See* Shields Aff., ¶3. On June 28, counsel for Red first contacted Boston Ventures to discuss Boston Ventures' objection.

4

At that time, Red's counsel stated that he was most interested in documents concerning the Board approval process for new theaters that Rave wanted to build, and documents describing any procedure that Boston Ventures may follow when deciding to approve or disapprove an individual theater that Rave wanted to build. *See id.* Boston Ventures' counsel stated that if Red agreed to narrow the scope of Topic 5 to the documents just described, she would consult with her client and may agree to a compromise in which Boston Ventures would search for such documents. *See id.* Red's counsel said he needed to consult with his client and would let Boston Ventures' counsel know if he would so limit Topic 5. *See id.* Red's counsel further suggested that he may want to postpone the scheduled deposition so that the parties' dispute over Topic 5 could be resolved before the expense of the deposition was incurred. *See id.*, ¶4. Boston Ventures' counsel agreed with that approach and agreed to find other convenient dates for the deposition. *See id.* Over the next day, Red's counsel did not respond to Boston Ventures' counsel's telephone messages and ultimately refused to limit the scope of Topic 5. *See id.*, ¶¶5-6. Red's counsel did elect, however, to proceed with Boston Ventures' deposition even though the parties' dispute over Topic 5 was unresolved.

### D. Deposition of Elizabeth Granville-Smith

On June 30, 2005, Red took the deposition of Boston Ventures' corporate designee, Elizabeth Granville-Smith. Though Boston Ventures stated that it was not waiving any of its objections to Topic 5, in an attempt to obviate the need for motion practice, Ms. Granville-Smith answered all of Red's questions relating to the subject matter of Topic 5. In particular, Ms. Granville-Smith testified about the process that Rave generally followed when seeking the approval of its Board of Managers for new theaters that it wanted to build, and the procedures that Boston Ventures generally followed when deciding whether to approve an individual theater

5

that Rave wanted to build. *See* Shields Aff., Ex. A, at 88-90. Ms. Granville-Smith also described the review to which she and the other Board members subjected proposed theater projects submitted by Rave to its Board. *See id.* at 84, 91-92, 96-105. The Omaha project, however, never reached the level of Board consideration that Ms. Granville-Smith described. *See id.* at 35, 90. Rave's management never even submitted the Omaha project for Board consideration. *See id.* at 53, 92. The only two references to the Omaha project in Board documents are: (1) its appearance on a list of 18 theaters constituting Rave's two-year "theater pipeline," and (2) its mention on the related Board agenda, in which the "overview – 2004" topic (under which Omaha and two other proposed theaters were listed), was the last in a series of five topics under the general heading of "Real Estate Review," a subject allocated 45 minutes in a four hour Board meeting. *See* Index, Ex. 4.

Ms. Granville-Smith also testified that Boston Ventures has only made two investments in Rave, an investment of $50 million in 1999, and an investment of $10 million in 2002. *See* Shields Aff., Ex. A, at 130-31. She testified that neither investment was related to a specific theater site and that both investments were, instead, capital contributions to Rave as a company. *See id.* at 131. She explained that an LLC Agreement governed Boston Ventures' investment in Rave. *See id.* at 153.

## ARGUMENT

### A. Red's Motion to Compel The Production of Documents Responsive to Topic 5 Should be Denied.

Discovery under the Federal Rules is not a "fishing expedition." *Milazzo v. Sentry Ins.*, 856 F.2d 321, 322 (1st Cir. 1988) ("Discovery is not 'a fishing expedition;' parties must disclose some relevant factual basis for their claim before requested discovery will be allowed."); *Hardrick v. Legal Servs. Corp.*, 96 F.R.D. 617, 618 (D.D.C. 1983) (discovery "should be tailored

6

to the issues involved in the particular case"). Red's motion to compel all documents responsive to Topic 5 seeks the court's approval to conduct such an excursion. Topic 5, which requests all documents relating to Boston Ventures' "financing of, or investment in, Rave" is staggeringly overbroad. Investing is Boston Ventures' business. As an investor in Rave, all of Boston Venture's dealings with Rave necessarily "relate to" its "investment in" Rave. Topic 5 this seeks every document in Boston Ventures' possession that mentions Rave - likely thousands of documents. Red has not, and cannot, make a showing that such a broad swath of documents is relevant to the claims between Red and Rave concerning a potential theater project in Omaha.

The burden on Boston Ventures to search for and produce every document relating to its "financing of, or investment in, Rave" is grossly disproportionate to the value of such information in resolving the issues at stake in the underlying litigation. *See* Fed. R. Civ. P. 26(b)(2) (limiting discovery when the "burden or expense of the proposed discovery outweighs its likely benefit, taking into account . . . the importance of the proposed discovery in resolving the issues"). The issues in the suit between Red and Rave have nothing to do with Boston Ventures financing of, or investment in, Rave. Instead they relate to promises allegedly made by Rave – not Boston Ventures - about a proposed theater site, and whether certain expenditures were incurred in reliance on those promises.

Boston Ventures' first investment in Rave dates back to 1999 – years before the Village Pointe project was discussed between Red and Rave. Ms. Granville-Smith has testified that it did not make investments in Rave for particular theater sites. *See* Shields Aff., Ex. A. at 130-31. Rave's financial ability to enter into the proposed Omaha project is not at issue in the underlying lawsuit, and thus any financing in which Boston Ventures may have been involved is not at issue. There is no basis, particularly given the discovery that Red already has taken, to believe

7

that additional discovery into Boston Ventures' "financing of, or investment in, Rave" would yield evidence relevant to the Omaha project. Boston Ventures has already produced the limited amount of information it had about that project. As Ms. Granville-Smith testified, the Omaha project was simply never presented by Rave's management to its Board. *See* Shields Aff., Ex. A, at 53, 92.[1]

Red asserts that it needs the requested documents to discern the extent to which Boston Ventures instructed Rave not to proceed with plans to build a theater in the Village Pointe project or otherwise exerted control over Rave's decision not to build such a theater, and to determine whether Rave followed the procedures that were required to obtain its Board's approval to build such a theater. *See* Motion to Compel, at 8-9. Red ignores that fact that Ms. Granville-Smith already testified about the general steps Rave followed to seek approval for a theater, and further testified that Boston Ventures had *no* involvement in Rave's decision not to proceed with the Village Pointe theater. *See* Shields Aff., Ex. A, at 88-90. Moreover, if any such documents relating to Village Pointe existed, they would be covered by the subpoena requests for which Boston Ventures produced all responsive documents.

Red also speculates that the requested documents may be relevant to show "that a particular amount of money was allocated for the Omaha project." Motion to Compel at 9. Ms. Granville-Smith clearly testified to the contrary. She explained that neither of Boston Ventures' investments in Rave was related to a specific theater site. *See* Shields Aff., Ex. A, at 131.

---

[1] Sprinkled throughout Red's motion are references to a need to take discovery concerning the hearsay testimony of a Red employee that he was told by someone at Rave that Elizabeth Granville-Smith of Boston Ventures "killed the deal." *See* Motion to Compel, at 9. Red's complaint is a red herring -- it already had the opportunity to take any such discovery that it wanted. Red's counsel had a full and fair opportunity to ask Ms. Granville-Smith if she was involved in terminating a deal with Red, and about any conversations she may have had with Rave employees about the proposed Omaha theater. Red's true complaint is with the answer it received – that Rave never even sought the Board's or Ms. Granville-Smith's approval for the Omaha theater project. *See* Shields Aff., Ex. A, at 92.

8

There is thus a substantial disconnect between the documents that Red has requested in Topic 5 and Red's asserted justifications for its request. A far narrower request would have provided Red with the information, such as the LLC Agreement, it now claims to seek. Yet, when Boston Ventures' counsel offered to consider a compromise that would have provided Red with the documents it now says it wants, Red refused to narrow the scope of Topic 5. *See* Shields Aff., ¶¶3, 5-6. Red's refusal to entertain such a compromise suggests that its motivation is not to obtain necessary discovery, but rather to harass and impose unreasonable expenses on Boston Ventures.

Further, Red's motion to compel should be denied because Red has already had ample opportunity in discovery in the underlying action to obtain from Rave the documents it now says it wants from Boston Ventures. *See* Fed. R. Civ. P. 26(b)(2) (limiting discovery when it is "obtainable from some other source that is more convenient, less burdensome, or less expensive" or when "the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought"). There is no reason why Red could not have obtained Rave's L.L.C. Agreement from Rave. There is no reason why Red could not have obtained other documents governing Boston Ventures investment in Rave (to the extent such documents exist) from Rave itself. There is no reason why documents describing the procedures that Rave must follow, and standards that it must meet, to obtain Board approval for particular theater projects (to the extent such documents exist) could not have been obtained from Rave. Red should not be permitted to harass Boston Ventures, a third party to the underlying dispute, for discovery that it has not even bothered to pursue from its opponent. *Cf. Hayworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (upholding district court decision to require defendant to "seek discovery from its party opponent" before seeking the same information from a nonparty).

9

### B.     Red Should Not Be Permitted To Take A Second 30(b)(6) Deposition of Boston Ventures.

Red seeks an additional 30(b)(6) deposition to question Boston Ventures further about any documents that it may receive if its Motion to Compel is granted. Even if Red's motion is ultimately granted, or granted in part, Boston Ventures should be protected from the burden and expense of having to undergo another 30(b)(6) examination. Red was aware of Boston Ventures' position with respect to Topic 5 of its subpoena for almost a full year before it chose to take Boston Ventures' deposition, but made no effort to resolve the parties' dispute about that topic before the deposition. Even when, two days before the deposition, Boston Ventures' counsel agreed to look into alternative deposition dates so that Red could file a motion to compel before the deposition, Red decided to press forward. Red's decision to proceed in this fashion should not justify the imposition on Boston Ventures of additional deposition time. Moreover, without waiving Boston Ventures' objections to Topic 5, Ms. Granville-Smith already answered every one of Red's counsel's questions addressed to that topic, and provided testimony concerning the Board's role in approving Rave theater projects and Boston Ventures' two investments in Rave. Additional testimony would be duplicative. *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192-93 (1st Cir. 2001) (denying party's request to take additional non-party depositions where no new, relevant evidence would be obtained and the additional depositions would be unduly burdensome on the non-party); *see also Abdo v. Edison Chouest Offshore, LLC*, No. 02-512, 2003 WL 396350 (E.D. La. Feb. 19, 2003) (denying request to take additional deposition of non-party witness where party "had ample opportunity in the action to obtain the information sought").

10

## CONCLUSION

Boston Ventures has fully complied with its obligations under Fed. R. Civ. P. 45. It has produced the only documents in its possession, custody or control relevant to the underlying litigation. Red's efforts to impose on Boston Ventures the significant and unwarranted burden of producing every document relating to its financing of, or investment in, Rave is unjustified, and should not be condoned by this Court. Because Red chose to depose Boston Ventures' corporate designee notwithstanding the parties' dispute over the permissible scope of discovery, it should not be given another chance to do so. Similarly, Red should not be awarded its costs or expenses associated with this motion.

Dated: August 26, 2005                     Respectfully submitted,

                                           BOSTON VENTURES MANAGEMENT, INC.

                                           By: /s/ Kathleen Burdette Shields
                                               Kathleen Burdette Shields (BBO# 637438)
                                               CHOATE, HALL & STEWART LLP
                                               Two International Place
                                               Boston, Massachusetts 02110
                                               (617) 248-5000

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2005, I served Boston Ventures' Opposition to Plaintiffs' Motion to Compel and the accompanying Affidavit of Kathleen B. Shields in Support of Boston Ventures' Opposition to Plaintiffs' Motion to Compel on the following individuals by first class United States mail:

Edward G. Warin
McGrath, North, Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge St.
Omaha, NE  68102

Michael F. Coyle
Timothy Thalken
Fraser, Stryker, Meusey, Olson,
    Boyer & Bloch, P.C.
500 Energy Plaza
408 South 17th St.
Omaha, NE  68102

Lynn S. McCreary
Jennifer A. Donnelli
Bryan Cave LLP
1200 Main St., Suite 3500
Kansas City, MO  64105

Gary W. Harvey
Morrison Mahoney LLP
250 Summer Street
Boston, MA  02210

/s/ Kathleen Burdette Shields