IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

168TH AND DODGE, L.P., ET AL.,     )
                                  )
       **Plaintiffs,**               )        **Case No. 1:05-mc-10293-RGS**
**v.**                               )
                                    )
**RAVE REVIEWS CINEMAS, LLC,**       )
                                    )
       **Defendant.**              )

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO
## PLAINTIFFS' MOTION TO COMPEL

Defendant Rave Reviews Cinemas, LLC ("Rave Reviews") submits this

opposition to the Motion to Compel Compliance with Subpoena and for Continued Deposition

Testimony filed on August 5, 2005 [Docket No. 1] by Plaintiffs 168th and Dodge, L.P. and Red

Development of West Dodge, LLC (collectively, "Plaintiffs") against nonparty Boston Ventures

Management, Inc. ("Boston Ventures").[1]

## I.      PRELIMINARY STATEMENT

Plaintiffs' Motion to Compel should be denied in its entirety.  The subpoena at

issue[2] is not reasonably calculated to lead to the discovery of admissible evidence in the

underlying case.  Rather, the documents Plaintiffs seek are wholly unrelated to the claims

pending in Plaintiffs' lawsuit because:  (1) they have no connection to the real estate

development Plaintiffs built -- Rave Reviews never financed, built, or operated a theatre at the

development; and (2) they are unrelated to the alleged negotiations during 2002 and 2003

---

[1]       Rave Reviews joins and incorporates herein the opposition to the Motion to Compel filed by Boston
Ventures on August 26, 2005.

[2]       At issue is one category of documents requested by the subpoena (category 4 of Exhibit 2 to Plaintiffs'
Exhibit Index [Docket No. 3]):  "all documents relating to Boston Ventures['] financing of or investment
in, Rave Reviews."

1

between Rave Reviews and Plaintiffs for Rave Reviews to lease space at the development. The subpoena seeks documents concerning Rave Reviews' business operations generally (and the financing allowing those operations), when it is undisputed that any potential lease arrangement between Plaintiffs and Rave Reviews was never presented to Boston Ventures for consideration and Board approval.

Furthermore, Boston Ventures should not be required to provide additional deposition testimony about any documents or its business relationship with Rave Reviews, as it already has produced a corporate representative who provided several hours of testimony on all topics arguably related to the underlying case. Rave Reviews, through its counsel, traveled to Massachusetts for that deposition, which was in large part a fishing expedition, and Rave Reviews should not be forced to appear again for a further deposition about documents that have no bearing on the case. Thus, the Motion to Compel should be denied because it is nothing more than an attempt by Plaintiffs to harass Rave Reviews, burden Boston Ventures, and interrupt the parties' working relationship.

Moreover, Plaintiffs' Motion to Compel is untimely given that Boston Ventures (and Rave Reviews) objected to the scope of Plaintiffs subpoena over one year ago. See letter from counsel for Rave Reviews to plaintiffs' counsel dated August 4, 2004; see plaintiffs' Index of Evidence, Exhibit 3. For eleven months, Plaintiffs failed to act upon those objections. Plaintiffs waited until only two days before the deposition of Boston Ventures' corporate representative to dispute Boston Ventures' objections. Fully aware of the objections, Plaintiffs proceeded, and never sought to enforce the subpoena until over a month after the deposition had concluded. Accordingly, Plaintiffs' Motion to Compel should be denied as both procedurally defective and filed for an improper purpose.

960403v1

## II.    FACTUAL BACKGROUND

This is a case about Village Pointe, an outdoor commercial shopping center in Omaha, Nebraska that has more than 54 national, regional and local tenants. Plaintiffs developed, built, and now operate Village Pointe. Village Pointe was developed and built from 2001 through its grand opening in 2004. During the development of the center, in the spring of 2002, Plaintiffs contacted Rave Reviews to discuss the possible inclusion of Rave Reviews as the theatre tenant at Village Pointe. Rave Reviews is based in Dallas, Texas and operates a chain of movie theatres. Rave Reviews operates approximately 16 theatres.

**A.    Plaintiffs Contract to Purchase $2.6 Million in Land and Then Enter into a Letter of Intent for Rave Reviews to Operate a Theatre at Village Pointe.**

During 2002 and 2003, Plaintiffs and Rave Reviews periodically discussed the possibility of including Rave Reviews at Village Pointe. Although the parties were engaged in what only could be called preliminary negotiations, in September 2002, Plaintiffs entered into a contract to purchase an additional 14.67 acres of land adjacent to the development at a cost of more than $2.6 million, land that Plaintiffs claim to have earmarked for a theatre. In November 2002, the parties' verbal negotiations continued on paper and the parties entered into a non-binding Letter of Intent that the Nebraska court has ruled did not rise to the level of a contract.[3] The Letter of Intent provided:

> The purpose of this letter is to express the intent of Lessor (defined as Plaintiffs) to earnestly investigate and work in good faith toward an agreement whereby the Lessor would lease to Lessee (defined as Rave) the property described herein upon the terms detailed below.

See Letter of Intent, attached as Exhibit A, at p. 1. The Letter of Intent also indicates that it is not "a lease agreement or an option to lease." Id. Rather, according to the document, it "serve[s]

---

[3]      The Nebraska court has dismissed Plaintiffs' claim for breach of express contract.

960403v1

only to detail the terms and conditions which *would control* these parties in a subsequent

agreement should one be executed." Id. (emphasis added).

**B.      Plaintiffs Contract to Relocate a Gas Pipeline on the Land Without Having Any Lease Agreement with Rave Reviews.**

         With nothing more than the Letter of Intent in hand, Plaintiffs entered into a

contract in January 2003 to pay over $500,000 for the relocation of a natural gas pipeline lying

on the additional land Plaintiffs contracted to purchase the previous September.  Into the early

part of 2003, Plaintiffs continued their discussions with Rave Reviews about it becoming a

tenant of Village Pointe.

**C.      Plaintiffs End Lease Negotiations and Sue Rave Reviews.**

         In the spring of 2003, Rave Reviews decided that its lease negotiations with

Plaintiffs needed to include revised terms due to the entrance of a competing theatre in the

Omaha market that made the lease terms then in discussion unprofitable for Rave Reviews.

Rave Reviews' representatives Thomas Stephenson and Robert Painter informed Plaintiffs'

representative about the new theatre in the market and proposed alternative lease terms.

However, Plaintiffs refused to further negotiate and, just days later, entered into a Letter of Intent

with a different theatre to be a part of Village Pointe.  That theatre sits at Village Pointe today.

         On May 18, 2003, Plaintiffs filed suit against Rave Reviews for breach of

contract, promissory estoppel, and breach of implied contract.  The Court has dismissed

Plaintiffs' breach of contract claim, finding that the Letter of Intent did not create an enforceable

agreement between the parties.

4

D.    **Boston Ventures.**

Boston Ventures is a private equity investment company.  It is the largest equity investor in Rave Reviews.  Whenever Rave Reviews has built and operated a theatre, Rave Reviews has presented the governing lease agreement and related information to Boston Ventures representatives and other board members as part of the board approval process that must take place before Rave Reviews can sign any lease agreement.  Boston Ventures' corporate representative, Elizabeth Granville Smith, testified to this effect, as did Robert Painter, a Rave Reviews representative, at their depositions on June 30, 2005.  Board approval is a prerequisite to the execution of a lease.

It is undisputed in the underlying case that there was never anything more than drafts of a proposed lease agreement that went back and forth between Plaintiffs and Rave Reviews in connection with this negotiation.  It is undisputed that none of the drafts of the proposed lease agreement or other information was ever presented to Boston Ventures' representatives or other board members in connection with a request to approve the lease agreement and allow Rave Reviews to build a theatre at Village Pointe.  It also is undisputed that Boston Ventures had no involvement in any of the discussions between Plaintiffs and Rave Reviews about Village Pointe (or that Boston Ventures even knew about the substance of those discussions).  Nor did Boston Ventures have any input into the Letter of Intent or otherwise approve Rave Reviews signing it.  Boston Ventures also had no involvement in Plaintiffs' purchase of an additional 14.67 acres of land.  In fact, there is no evidence that Boston Ventures even knew about Plaintiffs' purchase of the land.  Nor did Boston Ventures have involvement in the relocation of the natural gas pipeline (or even know that the pipeline existed).  Boston Ventures never even visited Village Pointe.

### III.    PROCEDURAL BACKGROUND AND PLAINTIFFS' FAILURE TO FOLLOW THE GOVERNING PROCEDURAL RULES

Plaintiffs are attempting an end-run around the applicable Nebraska rules by appealing to this Court. Plaintiffs issued the subpoena now at issue sometime in mid-2004. At that time, Rave Reviews was unaware of the issuance of the subpoena because Plaintiffs, in contravention of the rules applicable in the underlying case, ignored their requirement to provide advance notice to Rave Reviews of the subpoena before issuing it. Rave Reviews only learned of the subpoena <u>after</u> it had issued.

Plaintiffs' failure to inform Rave Reviews of the subpoena before issuing it was in direct violation of the rules of the Nebraska court, which has promulgated local rules that contain a specific procedure governing the issuance of nonparty subpoenas. Local Rule 45.1 requires that notice of a contemplated subpoena be given to all parties with an opportunity to file an objection. <u>See</u> Exhibit B (District of Nebraska Local Rule 45.1). If a contemplated subpoena is objected to, it becomes incumbent upon the party seeking to serve the subpoena to request a hearing with the Nebraska court, at which time the court will determine whether the subpoena should be issued. According to Local Rule 45.1, "no subpoena shall be issued for documents … whose [] production is contested under this rule until the court has resolved the objection."

Plaintiffs failed to follow this procedure. Plaintiffs provided Rave Reviews no advance notice before serving the subpoena on Boston Ventures in 2004. Nor did Plaintiffs provide Rave Reviews notice of issuing any other subpoena to Boston Ventures requesting documents. Had Plaintiffs followed the rules, Rave Reviews would have had the opportunity to object to the issuance of the subpoena and the Nebraska court could have taken the present issue

6

up for determination. Rather than follow the rules, Plaintiffs ignored them.[4]

Furthermore, Plaintiffs truly have sat on their hands regarding this subpoena. Plaintiffs issued the subpoena to Boston Ventures over one year ago. At that time, Plaintiffs received Boston Ventures' written objection, but chose not to move to enforce the subpoena. Plaintiffs waited until over a month after the conclusion of the Boston Ventures' corporate representative's deposition to seek this relief. The appropriate time for Plaintiffs to have sought relief (after obtaining leave of the Nebraska court to serve the subpoena in the first place) was in August 2004 or sometime before a mere two days prior to the deposition of the Boston Ventures corporate representative.

Plaintiffs' delay in moving for this relief, coupled with the irrelevance of the documents and information sought, should preclude Plaintiffs from obtaining the relief sought through the instant motion. Rave Reviews should not bear the burden of attending a second deposition about documents that have no bearing on the case. Plaintiffs' calculated delay in moving to enforce their subpoena to Boston Ventures is not intended to lead to the discovery of admissible evidence. Rather, Plaintiff's enforcement of this overbroad subpoena is intended to harass Boston Ventures and Rave Reviews and to hinder the working relationship between Boston Ventures and Rave Reviews.

---

[4] The plaintiffs' habit of ignoring the rules it not novel in this matter. In his motion to be admitted to this court, counsel for the plaintiffs failed to follow Local Rule 83.5.3 in that his application for leave to practice in this court was not accompanied by a motion of a member of the bar of this court who also must file an appearance. Furthermore, the plaintiffs have not complied with Local Rule 7.1(A)(2) or Local Rule 26.2(C) in that the plaintiffs' motion to compel was filed without any effort on the part of the plaintiffs to confer with counsel for Rave Reviews prior to the plaintiffs' filing of their motion to compel.

960403v1

## IV.    ARGUMENT

Plaintiffs' Motion to Compel should be denied in its entirety for several compelling reasons.  First, the request at issue ("all documents relating to Boston Ventures' [] financing of or investment in Rave Reviews[]") is not reasonably calculated to lead to the discovery of admissible evidence and seeks documents wholly unrelated to this case.  Second, the request is burdensome on Rave Reviews because it seeks confidential and proprietary information about Rave Reviews' business dealings.  Furthermore, Plaintiffs have failed to follow the governing procedural rules and their request that this Court, rather than the Nebraska court, decide this matter has resulted in significant expenditure by Rave Reviews that could have been avoided.  Finally, Plaintiffs' purpose for belatedly seeking to enforce their subpoena against Boston Ventures can only be seen as an attempt to hinder the working relationship between Boston Ventures and Rave Reviews.  Why else would Plaintiffs move so late in the case to seek documents that have absolutely no bearing on their claims?  Accordingly, the Court should deny Plaintiffs' Motion to Compel in its entirety.

**A.    The Subpoena is Not Reasonably Calculated to Lead to the Discovery of Admissible Evidence Because it Seeks Documents Wholly Irrelevant to Plaintiffs' Claims.**

Fed. R. Civ. P. 26 governs the scope of discovery and provides that discovery is limited to only those documents "relevant to the claim or defense of a[] party."  See Fed. R. Civ. P. 26(b)(1).  Rule 26 further provides that discovery is limited to that which "appears reasonably calculated to lead to the discovery of admissible evidence," and relevance is a factor of admissibility.[5]

Plaintiffs' Motion to Compel should be denied because the subpoena request at

---

[5]    Plaintiffs thus incorrectly assert that "relevance" is not identified as a basis under Fed. R. Civ. P. 45 for the quashing of a subpoena.  See Motion to Compel, at p. 8.

issue is not reasonably calculated to lead to the discovery of admissible evidence.[6]  The request

seeks documents having no bearing on Plaintiffs' claims in the underlying case.  In particular,

the request seeks "all documents relating to Boston Ventures['] financing of or investment in,

Rave Reviews."  At the outset, the request is improper because it is not limited to Village Pointe.

Rather, the request asks for all documents concerning all Rave Reviews theatres, regardless of

location.  However, the only location being litigated is Village Pointe in Omaha, Nebraska and

that location was merely the site of a <u>possible</u> Rave Reviews theatre.  Moreover, Plaintiffs have

demonstrated absolutely no need for documents concerning other Rave Reviews theatres in

different states.

   Even if limited to Village Pointe, the request still seeks irrelevant information.

The "financing" of Rave Reviews (and investments in the company) concerning Village Pointe

did not exist.  The whole point of Plaintiffs' lawsuit is that there was never a lease agreement

signed between Plaintiffs and Rave Reviews.  No Rave Reviews theatre at Village Pointe was

ever financed by any party, including Boston Ventures.  No Rave Reviews theatre was ever

constructed or operated.  A competing theatre chain now operates at Village Pointe.

Accordingly, there was never any investment in Rave Reviews for a theatre at Village Pointe

because one has never existed.

   Furthermore, it is undisputed that no drafts of the proposed lease agreement

between Plaintiffs and Rave Reviews were ever presented to Boston Ventures.  Indeed, there is

---

[6]  Plaintiffs argue that "Boston Ventures is not a party to this lawsuit and does not have information to make a determination as to the relevancy of [] document[s]."  <u>See</u> Motion to Compel, at p. 8.  This argument is disingenuous at best in light of Plaintiffs' numerous attempts to impute knowledge to Boston Ventures about the events giving rise to the underlying case.  This argument also is inconsistent with Plaintiffs' assertion that "Boston Ventures … exercises significant control over Rave's operations."  <u>Id.</u>, at p. 1.  Nevertheless, <u>Rave Reviews</u> certainly is in the position to know the relevancy (or lack of relevancy) of the documents sought.

no evidence that the idea of a Rave Reviews theatre at Village Pointe was ever presented to

Boston Ventures for approval.  Nor was Boston Ventures ever presented with the Letter of

Intent, Plaintiffs' agreement to purchase the additional 14.67 acres of land, or Plaintiffs'

agreement to pay for relocation of the natural gas pipeline on the additional land.  Plaintiffs have

offered no evidence that Boston Ventures even knew of the Letter of Intent or Plaintiffs'

expenditures in alleged reliance on Rave Reviews' purported promises to lease space at Village

Pointe.

Plaintiffs have not established (and cannot) that the request seeks documents

relating to their claims against Rave Reviews.  Plaintiffs' claims are for promissory estoppel and

breach of implied contract.  Both claims turn on purported representations/promises allegedly

made by Rave Reviews, not Boston Ventures, to Plaintiffs.  Indeed, under Nebraska law,

Plaintiffs must establish the following for promissory estoppel:

> a promise which the promisor should reasonably expect to induce
> action or forbearance of a definite and substantial character on the
> part of the promise and which does induce such action.

Leach v. Treber, 82 N.W.2d 544, 547 (1957) (citations omitted).  An implied contract refers to

the type of contract which:

> arises from mutual agreement and intent to promise, when the
> agreement and promise have simply not been expressed in words.
> An implied contract arises where the intention of the parties is not
> expressed but where the circumstances are such as to show a
> mutual intent to contract.

Turner v. Fehrs Neb. Tractor & Equip. Co., 609 N.W.2d 652, 659 (Neb. 2000).  Thus, Plaintiffs'

claims concern alleged actions and promises by Rave Reviews to Plaintiffs.  Nothing relating to

Boston Ventures is relevant to what Plaintiffs must establish to show promissory estoppel or

breach of implied contract.  Indeed, Plaintiffs have never claimed any interaction with Boston

Ventures or that Boston Ventures was involved in any of the initial discussions about Rave Reviews operating a theatre at Village Pointe or in any of the lease negotiations.

Additionally, Plaintiffs argue that "if the LLC Agreement between Boston Ventures and Rave … required that Rave receive board approval before beginning lease negotiations that process appears to have not been followed by Rave." Motion to Compel, at p. 9. However, what did or did not occur between Boston Ventures and Rave Reviews has no bearing on what promises Rave Reviews allegedly made to Plaintiffs. The focus of this case is simply not on Boston Ventures – it is on what Rave Reviews did or did not do during lease negotiations with Plaintiffs and whether Plaintiffs reasonably relied on the purported "promises" by Rave Reviews.

Plaintiffs attempt to make much of the admission by Boston Ventures' corporate representatives that documents exist responsive to category number 4. Of course, documents exist relating to Boston Ventures' [] financing of or investment in Rave Reviews[]." Boston Ventures is the largest equity partner in Rave Reviews. However, as demonstrated above, Plaintiffs have not demonstrated any need, let alone compelling need, for these documents. Plaintiffs' Motion to Compel should be denied.

**B.    Enforcing the Subpoena Will Unduly Burden Rave Reviews.**

Plaintiffs' subpoena is burdensome on Rave Reviews because it seeks confidential and proprietary information about Rave Reviews' business dealings. Available protective order of not, Rave Reviews should not be forced to allow its financial dealings to be revealed when the lease agreement at issue in the underlying case was never signed and Rave Reviews has never operated (or financed) a theatre at Village Pointe. Indeed, Plaintiffs request seeks documents

11

going to the very heart of Rave Reviews' business – its financing and investment resources. Rave Reviews should not be forced to reveal this irrelevant information to Plaintiffs.

Rave Reviews also will be burdened if the Court enforces the subpoena because Rave Reviews has already incurred the expense of traveling to Boston for a deposition on June 30, 2005 that was in large part a fishing expedition.  In addition, now that Plaintiffs are belatedly moving to enforce the subpoena, Rave Reviews has had to retain Massachusetts counsel in connection with Plaintiffs' Motion to Compel and to prepare a response to the Motion to Compel, all for a subpoena that might not have been issued in the first place had Plaintiffs followed the Nebraska subpoena rules.  Rave Reviews will incur additional expense if the Court orders a further deposition of Boston Ventures -- a further deposition of Boston Ventures will only serve as a waste of the parties' resources.  On June 30, 2005, Plaintiffs inquired about every possible subject concerning Village Pointe and Rave Reviews' negotiations to lease space in the development.  Plaintiffs have demonstrated no need, let alone compelling need, for further deposition testimony from Boston Ventures.  Therefore, the Court should deny Plaintiffs' Motion to Compel.

C.    **Plaintiffs' Purpose for the Motion to Compel is Improper.**

Discovery in the underlying case closes on September 9, 2005 for deposition discovery and on September 15, 2005 for written discovery.  Plaintiffs served the subpoena at issue in July 2004.  Plaintiffs' purpose for belatedly seeking to enforce their subpoena against Boston Ventures can only be seen as an attempt to hinder the working relationship between Boston Ventures and Rave Reviews.  Why else would Plaintiffs move so late in the case to seek documents that have absolutely no bearing on their claims?  Why else would Plaintiffs move to enforce a subpoena when they already have received documents and deposition testimony from

Boston Ventures?  The answer can only be that Plaintiffs are improperly using the subpoena

power of this Court.  Plaintiffs' Motion to Compel should be denied in its entirety.


## IV.    CONCLUSION

For the reasons explained above, the Motion to Compel Compliance with

Subpoena and for Continued Deposition Testimony filed on August 5, 2005 [Docket No. 1] by

Plaintiffs 168th and Dodge, L.P. and Red Development of West Dodge, LLC against nonparty

Boston Ventures Management, Inc. should be denied.

Respectfully submitted,

**MORRISON MAHONEY LLP**

**By** /s/ Gary W. Harvey
    Gary W. Harvey, BBO #547993
    250 Summer Street
    Boston, MA  02210-1181
    Telephone: (617) 439-7576
    Facsimile: (617) 342-4875

BRYAN CAVE LLP                          McGRATH, NORTH LAW FIRM

Lynn S. McCreary, MO Bar # 46629        Edward G. Warin
Jennifer A. Donnelli, MO Bar #47755     Matthew W. Lytle
1200 Main Street, Suite 3500            1601 Dodge Street
Kansas City, Missouri  64105            Suite 3700 First National Tower
Telephone:  (816) 374-3200              Omaha, NE 68102-1627
Facsimile:   (816) 374-3300             Telephone: (402) 341-3070
                                        Facsimile: (402) 341-0216
Robert W. Shely, AZ Bar #014261         BRYAN CAVE LLP
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004
Telephone: (602) 364-7000
Facsimile:  (602) 364-7070


ATTORNEYS FOR DEFENDANT
RAVE REVIEWS CINEMAS, LLC

960403v1

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of August, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

> Kathleen Burdette Shields
> Choate Hall & Stewart
> 53 State Street
> Boston, MA 02109

I hereby certify that the foregoing was served to counsel for Plaintiffs via U.S. Mail, first class postage prepaid, this 26th day of August 2005 to:

> Michael F. Coyle
> Timothy J. Thalken
> David J. Stubstad
> Fraser Stryker Law Firm
> 409 South 17[th] Street, Suite 500
> Energy Plaza
> Omaha, NE 68102

/s/ Gary W. Harvey
_____

Attorney for Defendant



November 13, 2002

RED Development
6263 N. Scottsdale Rd., Ste. 222
Scottsdale, AZ 85250

480.947.7772 phone
480.947.7997 fax
reddevelopment.com

Kansas City office
816.777.3500 phone
816.777.3501 fax

*VIA OVERNIGHT DELIVERY*

Rave Review Cinemas, LLC
Robert E. Painter
Chief Operating Officer
3333 Welborn St., Suite 100
Dallas, TX 75219

    **RE:**    Proposed Lease (the "Lease") by and between 168ᵗʰ and Dodge, LP, a Nebraska limited partnership ("Lessor") and Rave Reviews Cinema ("Lessee") for space located at Village Pointe located at 168ᵗʰ Street and W. Dodge Road in Omaha, Nebraska

Dear Bob,

The purpose of this letter is to express the intent of Lessor to earnestly investigate and work in good faith toward an agreement whereby the Lessor would lease to Lessee the property described herein upon the terms detailed below. Although this letter is binding on the parties as to terms herein detailed, should the transaction contemplated occur, this shall not be construed as either a lease agreement or an option to lease. Until a definitive agreement (the "Lease") is executed, this shall serve only to detail the terms and conditions which would control these parties in a subsequent agreement should one be executed. If the following terms and conditions are acceptable to Lessee, please sign below indicating your agreement to the same. As soon as this Letter of Intent is fully executed by both parties, we will proceed to draw up the Lease in accordance with the Letter of Intent.

### GENERAL LEASE TERMS

| | |
|---|---|
| **Lessor:** | 168ᵗʰ and Dodge, LP, a Nebraska Limited Partnership<br>c/o Cohen Esrey Real Estate Services Inc.<br>1100 Main Street, Suite 2700<br>Kansas City, Missouri 64105<br>Lessor shall have the unlimited right to change the<br>Lessor, or assign to another entity. |
| **Lessee:** | Rave Motion Pictures |
| **Guarantor:** | Rave Reviews Cinemas, LLC |
| **Address:** | 3333 Welborn St., Suite 100<br>Dallas, TX 75219 |
| **Lessee's Premises:** | Approximately 82,330 square feet. |
| **Location of Leased Premises:** | A Site Plan designating Leased Premises as outlined or cross-hatched is attached hereto as Exhibit A, which exact location shall be subject to reasonable change as the Shopping Center shall be redesigned and reconfigured from time to time. |
| **Term:** | Twenty (20) year Base Term, with four (4) – five (5) year options to renew the lease |
| **Term/Commencement Date:** | The term and all charges shall begin on the earlier to occur of: |

RAVE000005

Exhibit A

November 13, 2002
Page 2 of 6

     a.  The day the Lessee opens for business; or

     b.  The expiration of 330 days after the delivery of possession. Lessor anticipates a June 1, 2003 possession, or earlier, if possible, allowing for a May 1, 2004 opening date.

**Minimum Rent:**    $16.00 per square foot

**Rent Increases:**    Commencing in year 11, minimum rent shall increase ten percent (10%) every five (5) years for the base term and options.

**Percentage Rent:**    Eight percent (8%) of all gross sales in excess of the Natural Breakpoint. Natural Breakpoint equals $16,500,000.00.

**Additional Rent:**    The Lessee agrees to pay its own Insurance (fire and extended coverage on the building) and its Real Estate Taxes and Special Assessments. Lessee will pay its prorate share of Common Area Maintenance (CAM) charges (including reasonable property management fee and liability insurance for Lessor), and security. Prorata share is calculated by dividing Lessee's gross leaseable area of the shopping center, less Scheels and Famous Barr. The estimated amount shall be paid monthly with minimum rent. CAM's will be capped at $2.00 PSF with five percent (5%) cumulative annual increases, excluding snow removal and common area utilities.

**Utilities:**    All utilities shall be in Lessee's name and a direct expense of Lessee

**Common Area Maintenance Charges:**    Lessee shall pre-pay monthly to Lessor Lessee's Share of common area maintenance (CAM Charges), which shall include a prorata share of Lessor's costs of: (i) maintenance and security for the Common Areas, including the storm detention/retention basin, access driveways and parking areas for the Shopping Center (inclusive of periodic new blacktopping of the parking areas); (ii) general liability insurance coverage on the common areas; (iii) mowing, landscaping, roof repairs, snow removal, parking lot sweeping, window washing, holiday decorations, courtyard music system, and all other items required to maintain the common area; and (iv) an administrative fee of fifteen percent (15%) of the aggregate of all CAM charges and Taxes and Insurance. The phrase Lessee's Share shall refer to a sum calculated by multiplying the CAM Charges for the entire Shopping Center (excluding those Lessees performing their own common area maintenance) whether or not actually leased, by a fraction, the numerator of which is the square footage of Lessee's Premises and the denominator of which is the approximate total square footage of the Shopping Center buildings, reduced by the total square footage of anchor Lessee Scheels All Sports (excluding those Lessees performing their own common area maintenance).

**Taxes:**    Lessee shall prepay monthly Lessee's Pro-rata Share of taxes, including real estate taxes and special assessments, on the Shopping Center. Tenant may be separately assessed and then paid directly to taxing authority.

**Insurance:**    Lessee shall maintain fire and extended coverage insurance on Lessee's fixtures and improvements for full replacement value. Lessee shall also maintain commercial general liability coverage, naming Lessor as additional insured, at the minimum amount of $5,000,000.00 combined single limit. In addition, Lessee shall prepay monthly Lessee's share of fire and extended coverage insurance.

RAVE000006

November 13, 2002
Page 3 of 6

**Estimates of CAM, Taxes**
**and Insurance:**

Lessor estimates (without any liability for the accuracy thereof) the initial CAM
Charges, Taxes and Insurance to be as follows:

| | | |
|---|---|---|
| A. | Real Estate Taxes | $2.50 psf |
| B. | CAM Charges | $2.00 psf* |
| C. | Insurance | $ .25 psf |

*Excluding snow removal and Common Area utilities

**Gift Certificate Program:**

The Lessee shall be required to participate in the shopping center Gift Certificate
Program, at no expense to Lessee.

**Merchants Association:**

Lessee's store manager shall be required to participate in the shopping center
Merchants Association.

**Grand Opening:**

Rave will commit to spending at least $100,000 on their grand opening

**Anticipated Delivery Date:**

The anticipated Delivery Date shall be June 1, 2003, as may be extended by Force
Majeure or as updated by the Lessor from time to time.

**Outside Opening Date:**

Lessee shall have all construction substantially complete, commence operations and
be open for business to the public on or before three hundred thirty (330) days
from the Delivery of the Leased Premises to Lessee by Lessor.



**Opening and Operating**
**Agreement:**

*first 10 years of rent*

Lessee shall be required to open for business no later than the outside opening date
set out above, and continually operate during the term of the lease as a full service,
first class movie theater. ~~The Lessee tentatively projects an opening date of April 1,~~
~~2004, however, not before March 1, 2004, without Lessor written consent provided,~~
~~however, Lessee agrees to cooperate with Lessor to effect a joint opening of the~~
~~Shopping Center, and, at Lessor's request, agrees to delay the opening of Lessee's~~
~~business in the Premises (and to delay the Commencement Date hereof) from the~~
~~date Lessee otherwise would have opened for business under the provisions of this~~
~~Lease. If Lessor requests such a delay, then the Commencement Date shall be the~~
~~date set by Lessor for such joint opening ("Grand Opening") of the Shopping~~
~~Center. Lessor shall not be responsible or liable to Lessee or those claiming by,~~
~~through or under Lessee for loss or damages caused by or resulting from a delayed~~
~~joint opening of the Shopping Center.~~

**Signage:**

Lessee shall be entitled to building signage per Lessor's shopping center sign
criteria.

**Assignment:**

Lessee shall have the right to assign the lease to a third party in the case of a
sale/leaseback, or a similar off balance sheet financing provided that all other
assignments are contingent upon Lessor's reasonable approval.

**Promotional Fund:**

Lessee agrees to participate in the Promotional Fund and contribute $.25 PSF to it,
and will be increased annually by the corresponding CPI. Lessee will participate in
all promotional activities and identify the name and location of the project in all
advertising. Additionally, Rave agrees to spend $100,000 in Theater Grand
Opening and participate in a "giveaway" program with the Lessor.

RAVE000007

November 13, 2002
Page 4 of 6   –

| | |
|---|---|
| **Radius Restriction:** | Three (3) miles |
| **Financial Statements:** | The Lessee and Guarantor shall immediately submit current financials to Lessor. |
| **Lease Documentation:** | Lease Comments by:  *<to be inserted>*<br>Lease Execution by:  *<to be inserted>* |

## TERMS RELATING TO CONSTRUCTION

| | |
|---|---|
| **Preliminary Plans:** | Lessee shall submit to Lessor for approval preliminary plans and specifications for Lessee's Work within thirty (30) days of execution of the Lease by both parties. |
| **Building Allowance:** | $75.00 PSF |
| **Lessor Improvements:** | Lessor shall deliver a rough graded building pad and utilities to within five (5) feet of the building pad.  Additionally, Lessor shall complete all on and off site improvements. |
| **Parking:** | Lessor shall provide and maintain sufficient parking to meet local code. |
| **Maintenance and Repair:** | Lessee shall be responsible for maintaining their own building. |
| **Lessee's Contractor:** | Lessee's Contractor shall be required to post a damage deposit with Lessor, which will be returned in full upon completion of work and finalization of the punchlist. The Contractor shall execute an agreement with Lessor stating such prior to commencement of construction.  (same requirements as Jefferson Pointe) |

**Legal Contacts:**

Lessor:
~~The Katz Law Firm~~
Rick Katz
6299 Nall Avenue, Suite 210
Mission, KS 66202
Phone:  913-312-5050
~~Fax:     913-312-5047~~

Lessee:
Bryan-Cave LLP
c/o Chris Fisher
1200 Main St., 35th Floor
Kansas City, MO  64105-2100

*Mulrenin Conn & Frances*
*Joseph Conn*
*170 Jennifer Rd # 320*
*Annapolis, MD 21403*
*410-573-2484*
*410-224-6539*

Sincerely,

**RED DEVELOPMENT**

Scott Rehorn

RAVE000008

November 13, 2002
Page 5 of 6

AGREED TO AND ACCEPTED BY:

LESSEE:
RAVE REVIEWS CINEMAS, LLC

LESSOR:
168ᵗʰ AND WEST DODGE, LP

By: RED DEVELOPMENT OF WEST DODGE,
LLC, a Missouri limited liability company, its
General Partner

By: _____

Name: _Robert E. Paninsu_

Title: _C.O.O._

Date: _11/21/02_

By: _____

Name: _Scott Rehorn_

Title: _Member_

Date: _11/26/02_

RAVE000009

**EXHIBIT A**
**SITE PLAN**

The parties acknowledge that the development of a shopping center reasonably requires changes to the Site Plan to accommodate the specific needs of the Lessees. Lessor shall provide such changes to Lessee as they are made. Lessee agrees to provide notice to Lessor of any objections to such Site Plan within ten (10) days of receipt. Should such objection not be received, then the Site Plan shall be assumed to be acceptable to Lessee.

See attached site plan on next page

RAVE000010



RAVE000011

Nebraska Civil Rules

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

### CIVIL RULES

### TABLE OF CONTENTS

| | | |
|---|---|---|
| 1.1 | Definitions | 1 |
| 3.1 | Civil Cover Sheet | 1 |
| 3.2 | Prepayment of Filing Fees | 2 |
| 3.3 | Applications to Proceed in Forma Pauperis | 2 |
| | (a) Financial Affidavit | 2 |
| | (b) Prisoner Applications; Trust Account Information | 2 |
| | (1) Consent to Release of Information and to Payment of Fee | 2 |
| | (2) Continuing Payment Obligation | 2 |
| | (c) Multiple Plaintiffs | 3 |
| 4.1 | Service of Process | 3 |
| 5.1 | Electronic Case Filing (ECF) | 3 |
| | (a) Electronic Pleadings Authorized | 3 |
| | (b) Mandatory Filing | 3 |
| | (c) Exceptions | 3 |
| 5.2 | Electronic Service | 4 |
| 5.3 | Privacy | 4 |
| | (a) Mandatory Redaction of Filed Documents | 4 |
| | (b) Discretionary Redaction of Filed Documents | 4 |
| | (c) Unredacted Documents Filed Under Seal | 5 |
| | (1) Motion | 5 |
| | (2) Procedure | 5 |
| | (3) Redacted Copy | 5 |
| | (d) Responsibility for Redaction | 5 |
| 5.4 | Certificate of Service | 5 |
| | (a) Form | 5 |
| | (b) Electronic Certificate of Service | 5 |
| | (1) Required | 5 |
| | (2) Nonregistered Parties | 6 |
| | (c) Filing of Certificate | 6 |

**Exhibit B**

request for trial at Omaha, Lincoln, or North Platte. If the request is for a place different from that requested by the plaintiff, third-party plaintiff, or removing party, it must be accompanied by a supporting affidavit.

**(1)    Form of Request.** The request for place of trial may be a separate pleading or may be endorsed upon the complaint or other initial pleading, and shall be served upon each party.

**(2)    Conflicting Requests.** The judge may resolve conflicting requests without oral argument. Except for cases governed by the special rules for the Nebraska docket and for the death penalty, *see* NEGenR 1.4(a)(5) and (6), the judge shall consider the convenience of the litigants, witnesses, and counsel when deciding the place of trial.

**(3)    Amended Request.** A party may amend an initial or opposing request for place of trial at any time during the pendency of the action if material circumstances bearing on the proper place of trial change.

**(c)    Calendaring Cases.** The clerk shall calendar the case according to the initial request. If the parties make no initial request, the clerk will calendar the case in the city where the clerk's office receiving the case for filing is located.

**41.1    Dismissal of Actions.** If a case which has been at issue for one (1) year or more and in which for a period of one (1) year no advancement has been made in the pleadings or in its preparation for trial, the court may order the case to trial forthwith or dismiss it unless good cause is shown for some other disposition. The court may at any time dismiss an action for lack of prosecution when it appears it is not being prosecuted with reasonable diligence.

**45.1    Subpoenas to Nonparties.**

**(a)    Notice to Adverse Party.** No subpoenas for production or inspection may be issued for service on a nonparty without giving the adverse party at least ten (10) days notice before the subpoena will be issued. The notice shall state the name and address of the nonparty who will be subpoenaed, the documents or items to be produced or inspected, the time and place for production or inspection, and the date on which the subpoena will be issued.

**(b)    Objections.** After receipt of the notice, the adverse party shall have five (5) days to serve written objections to the subpoena on the party who gave notice that a subpoena would be issued. The adverse party must specifically identify the grounds for the objections. No subpoena shall be issued for documents or premises whose inspection or production is contested under this rule until the court has resolved the objection. Nothing in this rule affects

the availability of objections set forth in Federal Rule of Civil Procedure 45(c) and (d).

**(c)    Hearing.**  The party who gave notice that a subpoena would be issued may move for a hearing on unresolved objections.  Upon hearing after notice to all parties, the court may order that the subpoena be issued or not issued, or that discovery proceed in a different manner or subject to a protective order.  The court may also, in its discretion, award expenses.

**(d)    Effect of Failure to Object.**  A failure to object to issuance of a subpoena to a nonparty shall not preclude an adverse party from moving for a protective order under Federal Rule of Civil Procedure 26(c).

## 47.1    Jury Pool Questionnaires.

**(a)    Standard Jury Questionnaire.**  The clerk shall submit questionnaires to potential members of the jury pool.  These completed questionnaires by prospective jurors cannot be obtained by counsel or the parties and are not available for review unless ordered by the court.  A list of potential jurors will be available to parties and their counsel prior to trial and is to be used exclusively for the purposes of jury selection.  Information included on the list shall not be released to members of the public.

**(b)    Additional Questionnaire for a Specific Case.**  The judge who will preside over a trial may determine sua sponte or upon the motion of a party that the circumstances of a particular case justify submitting additional questions to prospective members of a jury pool.  In the interest of securing a fair and impartial trial, the judge may solicit assistance from the parties in drafting additional questions and may require that additional written questions be submitted to potential members of the jury pool.

## 47.2    Jury Selection.

**(a)    Voir Dire.**  Voir dire examination may be conducted by the court, by counsel, or by both, as the court shall determine.  Within the sound discretion of the court, counsel's examination may be limited by time and subject matter.

**(b)    Peremptory Challenges.**  Unless otherwise ordered, all parties shall exercise peremptory challenges alternately, beginning with the plaintiff.  Each party will be informed, after the exercise of each peremptory challenge, of the identity of each prospective juror peremptorily challenged by each other party.

**(c)    Waiver of Peremptory Challenges.**  To pass or refuse to exercise a peremptory challenge constitutes a waiver of the right to exercise the